```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

       UNITED STATES OF AMERICA                    SEALED MEMORANDUM &
                                                           ORDER
              -against-
                                                      16-CR-457-1 (NGG)
       MARK JOHNSON,

                       Defendant.

-----------------------------------------------------------------------X
```

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Mark Johnson is charged with one count of conspiracy to commit wire fraud and ten counts of wire fraud. (Indictment (Dkt. 9) ¶¶ 36-40.) The charges stem from Defendant's involvement in a foreign exchange transaction executed in 2011 for a client of Defendant's employer. (Id.) The Government alleges that Defendant and others executed a series of trades through which they benefited from confidential information obtained in from the client, to the client's detriment. (See id. ¶ 10.)

Before the court are the Defendant's fourth motion in limine (Def. 4th Mot. in Limine ("4th MIL") (Dkt. 82)), and the Government's first and seventh motions in limine (Gov't MILs ("1st MIL") (Dkt. 85); Gov't 2d Suppl. MIL ("7th MIL") (Dkt. 99)). For the following reasons, the court DENIES the Defendant's fourth motion in limine, GRANTS the Government's first motion in limine, and DENIES the Government's seventh motion in limine.

**I.   BACKGROUND**

The court assumes familiarity with the allegations against Defendant, which are discussed at greater length in prior opinions. (See, e.g., Sept. 1, 2017, Mem. & Order (Dkt. 101) at 1-3.)

Defendant's fourth motion in limine and the Government's first motion in limine focus on a substantially similar, overlapping set of documents pertaining to the early stages of the

1

client transaction at issue in this case (the "Cairn Transaction"). Defendant's motion specifically sought to exclude a non-disclosure agreement (the "NDA") and a "request for proposal" (the "RFP") executed by HSBC and its client, Cairn, in connection with the then-proposed FX transaction, as well as communications related to those documents.[1] (4th MIL at ECF pp. 41-45.) Separately, the Government's first motion in limine sought a declaration that certain categories of out-of-court statements made by HSBC employees, other than Defendant and his alleged co-conspirators, are admissible for the non-hearsay purpose of establishing that "HSBC owed Cairn a duty of 'trust and confidence.'" (1st MIL at 1.) The Government does not provide a full list of communications contemplated by its motion, but does list as examples a number of proposed exhibits which, like the NDA and the RFP, date from the time period during which HSBC first pitched its services in connection with the eventual Cairn Transaction. (Id. at 2-5.) Those communications include calls and emails between HSBC employees and Cairn and Cairn's outside advisor; a presentation outlining HSBC's proposal for the transaction; and one message between Cairn and its outside advisor discussing HSBC's proposal.

Examining these motions, the court observed that the Government's basis for admitting both sets of challenged documents appeared to be a legal theory of liability that Defendant "misappropriated" information subject to a fiduciary or fiduciary-like duty. (Sept. 1, 2017, Mem. & Order at 10-12.) The court concluded that it could not assess the admissibility of the evidence at issue in the two motions without an explanation of the Government's theory. (Id. at 11-12; 24-25.) In particular, the court noted that "[i]t is unclear whether the Government alleges that Defendant himself had a fiduciary-like relationship with Cairn, or rather HSBC had a fiduciary-like relationship with Cairn and that the resulting restrictions extended to Defendant

---

[1] Defendant specifically identified three email chains, marked as GX 101, 102, and 103, between HSBC employees, Cairn, and Cairn's outside advisor, exchanging versions of the NDA and RFP. (4th MIL at 3.)

2

individually." (Id. at 10-11.) The court therefore reserved judgment on both motions in limine and ordered the Government to submit supplemental briefing on its apparent "misappropriation" theory.

Separately, in its seventh motion in limine, the Government sought to exclude proposed testimony by Defendant's expert witness Kevin Rodgers that "the price paid by Cairn fell within a commercially reasonable range." (7th MIL at 6-8). In particular, Defendant represented that Rodgers would "testify that the price paid by Cairn fell within a commercially reasonable range." (Def. Expert Disclosure (Dkt. 93-1) at 7.) The Government argued that this testimony should be excluded pursuant to Federal Rule of Evidence 403, as it "suggest[ed] a 'no harm, no foul' defense" that did not comport with the established law of fraud. (Id. at 7.) Noting that the issues raised in that motion overlapped with the "right to control" theory raised in the Government's supplemental brief—to which Defendant had not yet responded—the court reserved ruling on this motion as well. (Sept. 20, 2017, Mem. & Order (Dkt. 120) at 14 n.5.)

## II.    LEGAL STANDARD

### A.    Motions in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy,

3

840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41. The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion in limine. See United States v. Pugh, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

## III. DISCUSSION

In its supplemental submissions,[2] the Government presents two theories of admissibility, one based on "misappropriation" and one based on the "right to control." (Gov't Suppl. Br. ("Suppl. Br." (Dkt. 108); Gov't 2d Suppl. Br. ("Suppl. Reply") (Dkt. 123).) The court reviews the admissibility of the challenged evidence under these two theories separately. For the following reasons, the court concludes that the Government's theories provide a sufficient basis for admitting the NDA, RFP, and evidence of representations made by HSBC while presenting its services to Cairn. The court also finds that the proposed testimony by Defendant's expert that Cairn paid a "commercially reasonable price" in connection with the transaction is relevant and admissible in light of the Government's expressed "right to control" theory.

### A. The Government's Theories of Admissibility and Application to the Challenged Evidence

#### 1. *"Misappropriation" Theory*

##### a. Overview

The first theory put forth in the Government's supplemental brief is that Defendant "misappropriated" information that was subject to a duty of trust and confidence. Broken into its constituent parts, the Government's fraud theory is that: (1) HSBC entered into a "duty of trust and confidence" with Cairn with respect to the December 7, 2011, transaction; (2) Defendant

---

[2] Following Defendant's response to the Government's supplemental briefing, the Government received permission from the court to file a supplemental reply. (Sept. 14, 2017, Order.)

4

knew of and accepted that duty; and (3) Defendant used information subject to that duty for his own personal benefit. (Suppl. Br. at 1.)

The Government draws on a body of law describing what has been termed as the "misappropriation theory" in the context of both prosecutions under both the wire and mail fraud statutes as well as civil and criminal actions enforcing SEC Rule 10b-5, 17 C.F.R. § 240. Under that theory, a defendant may be held liable for fraud when, acting in violation of a fiduciary or fiduciary-like duty of trust and confidence owed to another person, he or she uses the other person's confidential business information for the defendant's own personal benefit. See Carpenter v. United States, 484 U.S. 19, 27 (1987); see also United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991) (en banc) (stating, in the context of a Rule 10b-5 prosecution, that "misappropriation theory requires us to consider not only whether there exists a fiduciary relationship but also whether there exists a 'similar relationship of trust and confidence'"). The fiduciary-like relationship at the heart of this theory exists where there is "discretionary authority and dependency: One person depends on another—the fiduciary—to serve his interests." Chestman, 947 F.2d at 569; see also id. at 568 ("At the heart of the fiduciary relationship lies reliance, and de facto control and dominance." (internal quotation marks, citation, and alterations omitted)). Describing misappropriation theory, the Second Circuit noted that

> In relying on a fiduciary to act for his benefit, the beneficiary of the relationship may entrust the fiduciary with custody over property of one sort or another. Because the fiduciary obtains access to this property to serve the ends of this relationship, <u>he becomes duty-bound not to appropriate the property for his own use.</u>

Id. (emphasis added).

The question of whether a fiduciary or fiduciary-like duty exists between the source of the confidential information and the alleged misappropriator is an issue of fact for a jury. See

5

United States v. Halloran, 821 F.3d 321, 340 (2d Cir. 2016) ("The existence of a fiduciary duty is a question of fact for the jury . . . .");[3] cf. also S.E.C. v. Singer, 786 F. Supp. 1158, 1169-70 (S.D.N.Y. 1992) ("The question before the Court at this juncture, then, is whether the plaintiff has proffered enough evidence to support a jury finding [that there was] a fiduciary duty, or that the two shared a 'similar relationship of trust and confidence . . . .'"). However, the Second Circuit has noted in dicta that, where a defendant lacks notice that they have accepted fiduciary duties, imposition of criminal liability may raise due process- and rule of lenity-based concerns. See United States v. Brennan, 183 F.3d 139, 149-150 (2d Cir. 1999).

b. Application

The Government contends that, under the foregoing theory, its proposed evidence relating to the early stages of the Cairn Transaction, as presented in Defendant's fourth and the Government's first motions in limine, is relevant to establishing the presence of a fiduciary-like "duty of trust and confidence" between HSBC and Cairn. In particular, it argues that representations made by HSBC to Cairn in the NDA, RFP, and pitch documents and communications "support[] misappropriation liability because they demonstrate that Cairn relied upon HSBC to act for its benefit and entrusted HSBC with custody over its confidential information." (Suppl. Br. at 8.) The Government also maintains that the NDA, RFP, and communications related to these documents are relevant to establishing that the information covered therein was "confidential business information" and so within the scope of misappropriation liability. (Id. at 7 (quoting Carpenter, 484 U.S. at 26).) Pointing to evidence that Defendant was aware of the substance of the representations made by HSBC and the

---

[3] The charges in Halloran involved "honest services" fraud, which, as the Second Circuit noted, requires a showing that the defendant participated in a bribery or kickback scheme in violation of a fiduciary duty. 821 F.3d at 337 (citing Skilling v. United States, 561 U.S. 358, 407 (2010)). The Second Circuit explicitly cited Chestman and other misappropriation decisions in describing the scope of the fiduciary duty required by "honest services" fraud. Id. at 338.

6

restrictions imposed by confidentiality agreements, the Government contends that these documents are fairly offered against Defendant as evidence of his individual fiduciary obligations as an employee of HSBC. (Id. at 5-7, 10-12.)

Defendant vigorously opposes the Government's arguments. Defendant presents two primary contentions: first, that, as a matter of law, the RFP, NDA, and pitch materials are insufficient to give rise to a fiduciary-like duty; and second, even if the Government could overcome that hurdle, Defendant was unaware of any obligations undertaken by HSBC and so did not personally accept any fiduciary-like duties. (See generally Def. Suppl. Opp'n Br. ("Suppl. Opp'n") (Dkt. 113) at ECF pp.8-26.) In support of his first argument, Defendant points to "governing documents [of HSBC and Cairn's engagement], general industry practice and understanding, and applicable law." (Id. at ECF p.8.) Defendant avers that all of these considerations show that similar transactions would not normally give rise to fiduciary-like duties and that the HSBC specifically disclaimed any fiduciary duty in its "master agreement" with Cairn. (Id. at ECF pp.9-19.) With respect to Defendant's second argument—Defendant's own acceptance of any heightened duties—Defendant contends that the Government fails to present any evidence that Defendant knew of the representations in HSBC's pitch materials or the confidentiality restrictions imposed by the NDA or RFP. (Id. at ECF pp.19-27.)

The court concludes that representations made by HSBC in its pitch to Cairn and the NDA and RFP are relevant to the Government's misappropriation theory of wire fraud because they tend to support the existence of a fiduciary-like relationship between those entities. The Government convincingly argues that representations in those documents as to how HSBC would handle Cairn's information and undertake the Cairn Transaction tend to make it more likely that there was a relationship of trust and confidence between HSBC and Cairn. The NDA

and RFP, for example, tend to support Cairn's expectation that HSBC would maintain information received in connection with the transaction in confidence and limit its use of that information, both features of a fiduciary-like relationship. See Chestman, 947 F.2d at 569 ("[A]n agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of that agency." (quoting Restatement (Second) of Agency § 395 (1958)). Likewise, affirmative representations made during the course of the pitch—such as representations that HSBC would facilitate "best execution" of the transaction (see 1st MIL at 4)[4]—are relevant for their tendency to establish the scope of HSBC's claimed duties and the foundation for Cairn's alleged reliance on HSBC and its employees to discharge those duties. Cf. United States v. Falcone, 257 F.3d 226, 234 ("[A] fiduciary relationship, or its functional equivalent, exists only where there is explicit acceptance of a duty of confidentiality or where such acceptance may be implied from a similar relationship of trust and confidence between the parties."); Chestman, 947 F.2d at 568 ("The [fiduciary] relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other"). This tendency of the proposed evidence to support the existence of a relationship of "trust and confidence" by HSBC is not undercut by the contrary facts to which Defendant points: the terms of the parties' master agreement; alternative readings of the NDA,

---

[4] While the point is largely lost in the parties' supplemental briefing, the Government's first motion in limine was originally aimed at obtaining a declaration that statements connected with the pitch were admissible for the non-hearsay purpose of showing their effect on Cairn and demonstrating HSBC's duty of trust and confidence. (1st MIL at 1.) As discussed above, the relevance of the pitch materials and surrounding communications is based on their tendency to show HSBC's own representations as to its obligations and the effect of those statements on Cairn. In both cases, the relevance of the statement does not derive from the truth of the matter asserted (e.g. that HSBC would execute the transaction in Cairn's best interests) but rather from the effect of the statement on the listener and the legal effect of the statements, respectively. Neither of these constitute hearsay use of the statements. See, e.g., United States v. Cardascia, 951 F.2d 474, 486-87 (2d Cir. 1991) (noting that statements that give rise to "legal consequences" are not hearsay); United States v. Gotti, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("[I]t is well established . . . that statements offered for their effect on the listener are non-hearsay." (internal quotation marks and citation omitted)). Defendant's contrary arguments on this point essentially go to the merits of the discussion above: he argues that the statements are not admissible because they do not in fact give rise to legal consequences. (Def. Opp'n to 1st MIL (Dkt. 90) at 3-5.) In light of the court's conclusion that the existence of a fiduciary-like relationship is a question for the jury, Defendant's argument on this point fails.

8

RFP and pitch materials; descriptions of common industry practices in "fix" transactions; and the role of Rothschild as Cairn's advisors in the transaction. Defendant's arguments suggest a factual, rather than a legal, dispute about the significance of HSBC and Cairn's dealings, and are not sufficient to exclude evidence the Government proffers to support its contrary interpretation of that relationship.

Likewise, the court is satisfied that the proposed evidence of dealings by other HSBC employees is relevant to Defendant's alleged duties to Cairn. In its prior order, the court expressed concern that the Government's misappropriation theory might seek to impose HSBC's duty to Cairn on Defendant without first establishing Defendant's acceptance of "fiduciary-like" duties or knowledge of the substance of the documents and communications alleged to support that duty. (Sept. 1, 2017, Mem. & Order at 11-12.) The Government's supplemental submissions allay these concerns for now, as the Government represents that it will introduce evidence and testimony that that Defendant was aware of the substance of both HSBC's representations during the pitch process and the confidentiality restrictions imposed on HSBC and its employees by the NDA and RFP. (Suppl. Br. at 5-13). In particular, the Government represents that it will provide evidence that Defendant (1) provided assistance in preparing pitch materials; (2) was placed behind an "information wall," which bound him to maintain confidentiality with respect to details of the Cairn Transaction; (3) participated in calls in which his status as an "insider" to the trade was discussed with Cairn; and (4) provided advice to Cairn regarding execution of the trade that comported with HSBC's earlier representations. (Suppl. Br. at 5-7, 10-13.) This proffered evidence and the Government's arguments respond directly to the court's expressed concern, inasmuch as they clarify the Government's theory that representations by and obligations placed on HSBC are relevant to Defendant's personal liability because the

9

Government intends to show that Defendant was aware of and accepted those representations and obligations.[5] While Defendant again contests as a factual matter whether the Government's evidence suggests such awareness (Suppl. Opp'n at 14-21), the court is satisfied that these disputes are properly raised before a jury and not decided by the court prior to trial.[6]

Accordingly, the court finds that the NDA, the RFP, communications surrounding those documents, and out-of-court statements that demonstrate HSBC's representations to Cairn in connection with the transaction are relevant to the charges against Defendant. Defendant's fourth motion in limine is therefore DENIED, and the Government's first motion in limine is GRANTED IN PART. At this point, the court cannot conclusively rule on the admissibility of documents other than the examples provided by the Government in its motion; however, the Government may introduce other statements consistent with this order.

2. *"Right to Control" Theory*

a. Overview

The Government's supplemental brief also introduces a separate "right to control" theory, under which it alleges that Defendant deprived Cairn of "the right to control the use of [its] assets" by depriving it of "potentially valuable economic information that it would consider valuable in deciding how to use its assets." (Suppl. Br. at 3, 13 (quoting United States v.

---

[5] The court does not understand the Government to argue either that HSBC's alleged acceptance of fiduciary-like duties should be imputed to Defendant based solely on his employment, or that his receipt of confidential information without acceptance of a duty is sufficient to hold him liable under a misappropriation theory. See Falcone, 257 F.3d at 234 ("[A] fiduciary duty cannot be imposed unilaterally by entrusting a person with confidential information, and [] a fiduciary relationship, or its functional equivalent, exists only where there is explicit acceptance of a duty of confidentiality or where such acceptance may be implied from a similar relationship of trust and confidence between the parties." (internal quotation marks and citation omitted)); United States v. Skelly, 442 F.3d 94, 98 (2d Cir. 2006) ("Before the rigors of the criminal law may be imposed, the broker in question should reasonably be on notice that he has entered into a relationship with his customer that gives him heightened responsibilities.").

[6] For the first time in his supplemental memorandum, Defendant argues that the proffered information should be excluded as prejudicial and misleading. (See Suppl. Opp'n at ECF pp.19, 27.) Defendant does not offer any rationale for this argument, which appears to be based solely on the same grounds asserted with respect to his arguments that the proffered evidence is irrelevant. The court declines to separately address this argument without further elaboration from Defendant as to why the court should exclude this evidence.

10

Finazzo, 850 F.3d 94, 108 (2d Cir. 2017)).) The Government elaborates that the "potentially valuable economic information" at issue is "the existence of [Defendant's] and other HSBC traders' scheme to place FX orders ahead of Cairn's and that HSBC traded in a manner calculated to 'ramp' the spot price." (Id. at 13; Suppl. Reply at 9.)

The elements of wire fraud are "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the . . . wires to further the scheme." United States v. Binday, 804 F.3d 558, 569 (2d Cir. 2015). Under the "right to control" theory, "intangible interests such as the right to control the use of one's assets" qualify as "money or property" under the second element of wire fraud. Finazzo, 850 F.3d at 107-08; see also id. at 107 n.15 (noting that the "right to control" theory has been addressed as a matter of both the "money or property" element and the "fraudulent-intent" requirement). This intangible right to control one's own assets is harmed where a person is "deprived of information he would consider valuable in deciding how to use his assets." United States v. DiNome, 86 F.3d 277, 284 (2d Cir. 1996);[7] accord Finazzo, 850 F.3d at 108. "[M]isrepresentations or non-disclosure of information cannot support a conviction under the 'right to control' theory unless those misrepresentations or non-disclosures can or do result in tangible economic harm." Finazzo, 850 F.3d at 111.

b. Application

Viewed in connection with the previous discussion, the Government's "right to control" theory is best described in three parts: (1) that Cairn's right to control the use of its assets constitutes a cognizable property interest under the "money or property" element of the wire fraud statute; (2) that Defendant harmed this interest by depriving Cairn of information that

---

[7] Several of the opinions cited above analyze the "right to control" theory in the context of the mail fraud statute, rather than the wire fraud statute that provides the basis for the present charges. This is a distinction without a difference in the present discussion, however: "[b]ecause the mail fraud and the wire fraud statutes use the same relevant language, we analyze them the same way." United States v. Schwartz, 924 F.2d 410, 416 (2d Cir. 1991).

11

Cairn would consider to be valuable in deciding how to exercise that control, i.e. by failing to disclose the alleged scheme to engage in front-running and ramping; and (3) that Defendant's alleged misrepresentations or non-disclosure of information resulted in "tangible economic harm."[8] (See Suppl. Br. at 13.) The Government argues that the confidentiality restrictions in the RFP and NDA are relevant to this theory for their tendency both to demonstrate that Cairn would have considered information regarding the alleged front-running and ramping to be "valuable in deciding how to use its assets" (Suppl. Reply at 9), and to show the tangible economic harm resulting from the failure to disclose those trades (Suppl. Br. at 14). Likewise, the Government argues that presentations provided in connection with the pitch to Cairn evidence the value of information concerning front-running and ramping to Cairn because they identify price movements as a potential harm that HSBC would assist Cairn to avoid. (Id.)

Defendant, on the other hand, contends that both sets of documents are irrelevant to the "right to control" theory. He argues that, because the NDA and RFP were prepared by Cairn, they cannot contain any misrepresentations or omissions by HSBC or Defendant.[9] (Suppl. Opp'n at 23.) With respect to the pitch materials, Defendant argues that the Government does

---

[8] The court notes, however, that the "right to control" theory only speaks to the second element of the fraud, and the Government must still prove that the alleged harm to Cairn's property interest occurred in connection with a scheme to defraud and through the use of interstate wires. It is tempting to conflate the scheme to defraud and the failure to provide economically valuable information, and many cases treat the same conduct as relevant to both of these required showings, for example where a defendant made affirmative misrepresentations to the victims of the fraud. Cf., e.g., United States v. Carlo, 507 F.3d 799, 802 (2d Cir. 2007) (concluding that provision of "misleading information" hampered interest in right to control property); DiNome, 86 F.3d 277, 282-285 (2d Cir. 1996) (concluding that making false statements on mortgage application deprived the bank of valuable information and so the right to control its assets). However, requiring that the Government separately demonstrate the presence of a scheme to defraud in particular avoids the absurd result of allowing a defendant to be held liable solely for failing to disclose economically valuable information without showing either a duty to provide that information or the presence of some affirmative misrepresentation.

[9] Defendant offers a contrary interpretation of the NDA and RFP and points to other evidence which, he claims, contradicts the Government's assertion that Defendant and others deceived Cairn regarding their trading based on Cairn's confidential information. (Suppl. Opp'n at 23.) For substantially the same reasons discussed supra in Section III.B.1.b, the court does not evaluate whether this competing evidence supports one factual assessment or another.

12

not point to any misrepresentation in those materials that is attributable to Defendant and so contends that they are therefore inadmissible.

Defendant's arguments misapprehend the Government's contentions, however, and the court agrees that the NDA, RFP, and documents reflecting representations made by HSBC during its pitch to Cairn are relevant to the wire fraud counts under a "right to control" theory. The relevance of the NDA and RFP are not, as Defendant suggests, based on their tendency to demonstrate any misrepresentations. Instead, the court agrees with the Government that confidentiality restrictions in the NDA and RFP suggest Cairn would have viewed information regarding trades executed in alleged violation of those agreements to be "valuable in deciding how to use [its] assets," DiNome, 86 F.3d at 284, and that such trading could lead to "tangible economic harm," Finazzo, 850 F.3d at 111. Similarly, the relevance of the pitch materials does not depend on whether they contain any misrepresentations. Quite the opposite: the Government asserts that those materials are relevant because they honestly reflect reasons that Cairn would consider information regarding trading in advance of the Cairn Transaction to be valuable.

For many of the same reasons, however, the court views the proposed testimony by Defendant's expert witness Kevin Rodgers as admissible to counter the Government's "right to control" theory. As noted above, Defendant proposes to present Rodgers' testimony "that the price paid by Cairn fell within a commercially reasonable range." (Def. Expert Disclosure at 7.) Establishing wire fraud based on a "right to control" theory requires the Government to show that the "misrepresentations or nondisclosures can or do result in tangible economic harm." Finazzo, 850 F.3d at 111; see also United States v. Mittelstaedt, 31 F.3d 1208, 1217 (2d Cir. 1994) ("[T]o convict [on the basis of a "right to control theory], the government had to establish that the omission caused (or was intended to cause) actual harm . . . of a pecuniary nature or that

13

the [victim] could have negotiated a better deal for itself if it had not been deceived." (emphasis added)). Testimony that Cairn received a "commercially reasonable price" has an obvious tendency to show that no "tangible economic harm" in fact resulted from Defendant's alleged failure to disclose any pre-transaction trading. Moreover, Rodgers' testimony inferentially supports one of the bases for Defendant's asserted good faith defense, i.e., that Defendant understood Cairn to have bargained for "reasonable execution," rather than the best available price. (Def. Opp'n to 7th MIL (Dkt. 107) at 9.) Viewed in this light, Rodgers' testimony tends to support Defendant's argument that no tangible economic harm was intended and that Defendant believed Cairn actually received the services for which it had contracted. Cf. United States v. Heimann, 705 F.2d 662, 669 (2d Cir. 1983) ("While technically the success or failure of a scheme to defraud is irrelevant in a mail fraud case, realistically, when the contested issue is intent, whether or not victims lost money can be a substantial factor in the jury's determination of guilt or innocence." (internal citations omitted)). The court thus finds that Rodgers' testimony regarding the commercial reasonableness of the price paid by Cairn is relevant to whether the alleged misrepresentations that form the basis of the Government's case either could or did result in tangible economic harm, and so is relevant as to whether the elements of the "right to control" theory are satisfied.[10]

Accordingly, the court concludes that the RFP, the NDA, and the pitch materials identified in the Government's first supplemental brief are relevant to the wire fraud charges under a "right to control" theory. The court also concludes that Rodgers' testimony that the Cairn Transaction resulted in a "commercially reasonable price" is relevant and admissible.

---

[10] In light of the court's conclusion that Rodgers' testimony is directly responsive to the Government's "right to control" theory, it also finds that there is minimal potential for jury confusion regarding the applicable standard and that any potential for confusion is minimal relative to the probative value of that testimony.

## IV. CONCLUSION

For the foregoing reasons, the court:

- DENIES Defendant's fourth motion in limine (Dkt. 82) to preclude evidence and testimony related to the NDA and RFP;

- GRANTS IN PART the Government's first motion in limine (Dkt. 85) to admit out-of-court statements for non-hearsay purposes; and

- DENIES the Government's seventh motion in limine (Dkt. 99) to preclude defense expert Kevin Rodgers from testifying that the price Cairn paid for Sterling was "commercially reasonable."

SO ORDERED.

Dated: Brooklyn, New York
September 21, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge