UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
UNITED STATES OF AMERICA,

               -against-

MARK JOHNSON,

                       Defendant.
------------------------------------------------------------

MEMORANDUM & ORDER
16-CR-457-1 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Mark Johnson moves for an order granting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that his underlying medical condition and the risks to his health posed by the COVID-19 pandemic, coupled with the anticipated conditions of his confinement and his ongoing charitable work, constitute "extraordinary and compelling" circumstances that merit the reduction of his sentence to time served and supervised release with a condition of home confinement. (*See* Mot. to Reduce Sentence ("Mot.") (Dkt. 286); Mem. in Supp. of Mot. to Reduce Sentence ("Mem.") (Dkt. 286-1) at 1-3.) The Government opposes the motion, arguing that Mr. Johnson is not eligible for relief under § 3582(c)(1)(A) because he is not currently in the custody of the Bureau of Prisons ("BOP") and, alternatively, that Mr. Johnson's circumstances do not warrant a sentence reduction. (*See* Gov't Mem. in Opp. to Mot. ("Opp.") (Dkt. 287).)

As explained below, the court agrees with Mr. Johnson that resuming his term of imprisonment at this time, prior to his receipt of a COVID-19 vaccine, poses an unjustified risk to his health, but it agrees with the Government that Mr. Johnson's circumstances do not warrant a sentence reduction. Accordingly, Mr. Johnson's motion is DENIED without prejudice to renew, and his surrender date is EXTENDED until either August 1, 2021 or three weeks after his final dose of a COVID-19 vaccine, whichever occurs first.

1

## I. BACKGROUND

On October 23, 2017, a jury convicted Mr. Johnson of seven counts of wire fraud and one count of wire fraud conspiracy, arising from a foreign currency exchange transaction that he engineered in his former role as the global head of the foreign exchange trading desk at the investment bank HSBC. (Mem. at 4; Opp. at 1.) On April 26, 2018, this court sentenced Mr. Johnson principally to 24 months' imprisonment, well below the U.S. Sentencing Guidelines range of 87-108 months. (Mem. at 4; Opp. at 3-4) Mr. Johnson was remanded to custody and served two months of his sentence, first at the Metropolitan Detention Center and then at FMC Devens. (Mem. at 4.) On June 19, 2018, the Second Circuit granted Mr. Johnson's motion for bail pending appeal, and on June 26, 2018, this court authorized Mr. Johnson to return to his home in a rural area of England to await the outcome of his appeal. (*Id.*)

On September 12, 2019, the Second Circuit affirmed Mr. Johnson's conviction. *See United States v. Johnson*, 945 F.3d 606 (2d Cir. 2019). On January 23, 2020, the Second Circuit denied Mr. Johnson's petition for rehearing, and on November 2, 2020, the Supreme Court denied his petition for certiorari. (Mem. at 4.) On November 23, 2020, this court granted Mr. Johnson's application for a surrender date of March 23, 2021, on consent of the Government, and on December 1, 2020 it granted Mr. Johnson leave to file this motion. (*See* Nov. 23, 2020 ECF Order; Dec. 2, 2020 Minute Entry.)

Mr. Johnson has two heart conditions, atrial fibrillation and coronary artery disease, that place him at elevated risk of severe illness if he contracts COVID-19. (Mem. at 5-7; Letter from Dr. Mehul Dhinoja (Dkt. 286-2 at ECF pp. 16-17).) Since returning to the England on bail in June 2018, Mr. Johnson has been actively engaged in various community service and volunteer efforts, including a refugee settlement program, service on the

Governing Board of a secondary school serving students with autism, and volunteering for the National Health Service's pandemic relief effort. (Mem. at 7-12.)

## II. LEGAL STANDARD

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to reduce a defendant's sentence upon motion of either the Director of the BOP or the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

A court may reduce a defendant's sentence under § 3582(c)(1)(A) only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id.* The court therefore must consider "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* The Sentencing Commission, to which Congress delegated the responsibility to "describe what should be considered extraordinary and compelling reasons for sentence reduction," 28 U.S.C. § 994(t), has determined that a defendant's circumstances meet this standard when, *inter alia*, the defendant is "suffering from a terminal illness" or a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), 1(D). The Sentencing Commission has additionally determined that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community."

U.S.S.G. § 1B1.13(2). Finally, the defendant has the burden to show he is entitled to a sentence reduction. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).[1]

### III. DISCUSSION

#### A. Mr. Johnson's Statutory Eligibility

As an initial matter, the parties dispute whether Mr. Johnson is currently eligible for relief under § 3582(c)(1)(A), in light of the fact that he is awaiting surrender and is not in the custody of the BOP. The Government contends that § 3582(c)(1)(A) applies only to defendants who are in the BOP's custody, as evidenced by the statute's administrative exhaustion requirement that clealy contemplates that the movant will have administrative rights against the BOP. (Opp. at 12-15.) Mr. Johnson responds that the statute should not be read so narrowly as to restrict relief to currently incarcerated defendants, given that it contains no such explicit incarceration requirement and functions as a mechanism for sentence reduction, not for release. (Def.'s Reply ("Reply") (Dkt. 290) at 2-5.) *See United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions.").

The Second Circuit has not spoken on this issue, and district court decisions from this circuit offer at least plausible support for both parties' positions. On one hand, district courts have repeatedly denied § 3582(c)(1)(A) motions as premature when they are brought before the defendants begin serving their sentences. *See United States v. Jordan*, 472 F. Supp. 3d 59, 62-63 (S.D.N.Y. 2020); *United States v. Konny*, 463 F. Supp. 3d 402, 404-05 (S.D.N.Y.); *United States v. Sprull*, No. 18-cr-22 (VLB), 2020 WL

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

4

2113621, at *3 (D. Conn. May 4, 2020). In doing so, courts have explained that "by its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility." *Konny*, 463 F. Supp. 3d at 404. On the other hand, district courts have granted sentence reductions under this section to defendants who served substantial portions of their sentences but were no longer in BOP custody when they brought the relevant motions. *See United States v. Thrower*, No. 04-cr-903 (ARR), 2020 WL 6128950, at *4-5 (E.D.N.Y. Oct. 19, 2020); *United States v. Austin*, 468 F. Supp. 3d 41, 643-44 (S.D.N.Y. 2020). These courts have observed that "[n]otably absent from this statute is any express requirement that a defendant be in the custody of the [BOP] at the time he petitions for compassionate release" and that "the only absolute requirement is that a defendant be subject to a federal sentence." *Austin*, 468 F. Supp. 3d at 643; *see also Thrower*, 2020 WL 6128950, at *4.

Mr. Johnson's circumstances do not exactly resemble those of the defendants in *Jordan*, *Konny*, and *Sprull*: whereas those defendants sought to reduce sentences that they had not yet begun to serve, Mr. Johnson served two months – over eight percent of his total sentence – before he was released on bail. Nor do Mr. Johnson's circumstances exactly resemble those of the defendants in *Thrower* and *Austin*. The defendants in those cases served time and were thereafter released from custody – seemingly for good – after courts granted their 28 U.S.C. § 2255 petitions for writs of habeas corpus, but the orders granting their release were vacated by the Second Circuit; on remand, while the defendants awaited surrender, the courts granted their subsequent motions for compassionate release. Thus, even insofar as these two lines of decision are reconcilable, it is not clear to which group of defendants Mr. Johnson belongs.

Because the court finds that Mr. Johnson's present circumstances do not warrant a reduction in his sentence, the court finds it unnecessary to determine whether a defendant who has served a portion of his sentence, has been released on bail pending appeal, and seeks the reduction of his sentence prior to his surrender and reincarceration is eligible for relief under the statute. The court therefore assumes, without deciding, that it has the authority to grant Mr. Johnson's motion, and it proceeds to the merits of Mr. Johnson's claim.

Assuming (without deciding) that Mr. Johnson is eligible for relief even though he is not currently incarcerated, he may meet the statute's administrative exhaustion requirement. On December 8, 2020, Mr. Johnson submitted a request to the Warden of FMC Fort Devens, the BOP facility at which he was most recently in custody, and to the BOP's Northeast Regional Counsel, asking that they transfer him to home confinement or, in the alternative, bring a sentence-reduction application on his behalf. (Def't Request to BOP (Dkt. 286-4 at ECF pp. 18-24).) The next day, counsel for the BOP informed Mr. Johnson's attorneys that the BOP would not bring an application on Mr. Johnson's behalf, on the grounds that he was not in BOP custody. (BOP Response to Def't Request (Dkt. 286-4 at ECF pp. 25-26).) Under the circumstances, this may constitute the exhaustion of Mr. Johnson's administrative rights as against the BOP. *See Brooker*, 976 F.3d at 236 (noting the intent of the First Step Act is to give defendants an avenue to court when "the BOP fails to act" on their behalf.)

### B. Mr. Johnson's Circumstances

This court has previously acknowledged the potentially dire effects of COVID-19 on prison populations. *See United States v. Mongelli,* No. 02-cr-307 (NGG), 2020 WL 4738325, at *2 (E.D.N.Y. Aug. 14, 2020); *United States v. Efrosman,* No. 06-cr-95 (NGG), 2020 WL 4504654, at *2 (E.D.N.Y. Aug. 5, 2020);

6

*United States v. Donato,* Nos. 03-cr-929-9, 05-cr-60-10 (NGG), 2020 WL 3642854, at *2 (E.D.N.Y. July 6, 2020); *United States v. Porges,* No. 17-cr-431 (NGG), 2020 WL 350415, at *2 (E.D.N.Y. June 29, 2020). Still, "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States v. Nwankwo,* No. 12-cr-31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020).

Mr. Johnson alleges, and the Government does not dispute, that Mr. Johnson's heart conditions are serious and place him at a heightened risk for severe illness if he were to contract COVID-19. (Mem. at 15-19; Opp. at 15.) The Government does dispute, however, Mr. Johnson's contention that serving his sentence in BOP custody would substantially increase his likelihood of contracting COVID-19, citing BOP's "substantial efforts to control the spread of COVID-19 in its facilities" and the burgeoning vaccination campaign. (Mem. at 19-23; Opp. at 15-18.) For these purposes, the court does not question the sincerity and rigor of the BOP's efforts to combat the spread of the virus within its facilities, but there is no question that Mr. Johnson, like all residents of prisons and other congregate settings, would face a substantially greater risk of exposure to COVID-19 in BOP custody.[2] That risk is underscored by the steady drumbeat of COVID-19 outbreaks that have occurred at BOP facilities, including recent oubtreaks at the two facilities at which Mr. Johnson was previously in custody.[3]

---

[2] *See, e.g.,* Sharon Dolovich, *Mass Incarceration, Meet COVID-19,* 11/16/2020 U. Chi. L. Rev. Online 4 (2020).

[3] *See, e.g.,* Laura Crimaldi, Boston Globe, "Trahan, McGovern Urge Action Over COVID-19 Outbreak at Devens Federal Prison," Jan. 5, 2021,

Mr. Johnson has not yet received a COVID-19 vaccine, and neither the court nor the parties can predict with confidence when the vaccine will be available to him in the community where he resides in England. The Government suggests that it is "reasonably likely that [Mr.] Johnson will have access to a vaccine prior to" his surrender date of March 23, 2021, while Mr. Johnson suggests that he is more likely to gain access between June and September 2021. (Opp. at 17; Reply at 10.) Under the present circumstances, the court finds that requiring Mr. Johnson to surrender prior to receiving all necessary doses of an approved COVID-19 vaccine would subject him to severe and unjustifiable health risks. While Mr. Johnson's arguments regarding the uncertainties and risks posed by residing in a congregate setting during a pandemic even after he is vaccinated are well taken, the court's view is that Mr. Johnson may satisfactorily mitigate the increased risk to his health by receiving the vaccine prior to surrender.

The court also finds that the relevant sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against the reduction of Mr. Johnson's sentence at this time. As the court explained at the time of sentencing, Mr. Johnson's 24-month sentence reflects the court's

---

https://www.bostonglobe.com/2021/01/05/nation/trahan-mcgovern-urge-action-over-covid-19-outbreak-devens-federal-prison/ (last visited Feb. 9, 2021) (describing outbreak at FMC Devens that resulted in the infection of approximately one-third of the prison population); Editorial Board, N.Y. Times, "Opinion: Stop the Coronavirus Outbreak at Brooklyn's Federal Jail," Dec. 8, 2020, https://www.nytimes.com/2020/12/08/opinion/coronavirus-brooklyn-federal-jail.html (last visited Feb. 9, 2021) (noting that at least 55 inmates at the Metropolitan Detention Center tested positive for COVID-19 in a single week); Noah Goldberg, N.Y. Daily News, "First Inmate Reported Dead of COVID-19 at Brooklyn Federal Jail," Feb. 5, 2021, https://www.nydailynews.com/new-york/ny-inmate-dead-covid19-mdc-brooklyn-edwin-segarra-20210205-smbyfiuxang3tenbf5zka7qtz4-story.html (last visited Feb. 9, 2021) (reporting death of prisoner residing at Metropolitan Detention Center from COVID-19).

obligation to honor the jury's guilty verdict and to provide for general deterrence of white-collar crime, as well as its belief that a substantial downward variance from the Guidlelines range is appropriate in light of the Sentencing Guidelines' flawed approach to loss enhancement. (Sentencing Mem. (Dkt. 233) at 7-13.) The court continues to believe that a 24-month sentence is appropriate in light of those factors.[4] Mr. Johnson's motion is therefore denied without prejudice to renew, in the event that significant changes occur either in his personal circumstances, in vaccine availability, or in our collective understanding of the health risks that incarceration poses to vaccinated persons.

---

[4] Mr. Johnson argues that, in addition to the health considerations discussed above, the comparatively limited confinement options available to non-U.S. citizens in BOP custody and Mr. Johnson's community service work justify a reduction in his sentence. (Mem. at 26-29.) The court acknowledges these arguments and commends Mr. Johnson for his positive involvement in his community, but it finds that these circumstances do not warrant substantial weight in its analysis of the appropriateness of Mr. Johnson's sentence.

## IV. CONCLUSION

For the foregoing reasons, Mr. Johnson's motion for compassionate release is DENIED without prejudice to renew, and his surrender date is EXTENDED until either August 1, 2021 or three weeks after his final dose of an approved COVID-19 vaccine, whichever occurs first. Mr. Johnson's counsel is DIRECTED to provide the court with status reports on the last day of each month respecting Mr. Johnson's eligibility, efforts, and plans to receive an approved COVID-19 vaccine.

SO ORDERED.

Dated:   Brooklyn, New York
         February 9, 2021

                                              /s/ Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge